## 318

No. 58265.—M. Aschheim & Co., Inc. v. United States, petition 6969–R (New York).

Ekwall, Judge: This is a petition for remission of additional duties assessed pursuant to the provisions of section 489 of the Tariff Act of 1930, because of the undervaluation on entry of a quantity of wet salted cattle hides, imported from Buenos Aires, Argentina. The record discloses that the *pro forma* invoice showed a unit price of 15 cents per pound "c & f New York." The final appraised value was found to be the *per se* unit of 15 cents per pound, without deductions for non-dutiable charges.

Petitioner produced the testimony of two witnesses. The first, Mr. Benjamin B. Stein, who was an accountant with the petitioner at the time of this entry, testified that he supervised the placing of the order and that the terms of the contract of purchase (illustrative exhibit 1) called for a price of $0.15 per pound, "c & f" delivery, which was the price actually paid for the merchandise. This witness had nothing to do with the clearing of the merchandise through the customs, that matter being attended to by petitioner's broker, Alltransport, Inc. He further testified that he transmitted to said broker all bills, shipping documents, and matters of that nature. Also, that when the consular invoice was received, it was returned for correction and, upon receipt of a corrected consular invoice, that was turned over to said broker. The consular invoice attached to the official papers was the one which was returned for correction (illustrative exhibit 2). The witness explained that said invoice showed a lower value, $0.1375, which was less than the price finally paid, viz, $0.15 per pound. It was explained that this difference was due to the fact that when the merchandise originally was shipped for consignment, the value was determined at the date of sale; that said market value is based on a daily price that is bid in the open exchange in which hides are dealt in. The witness stated that he believed that the price shown on the invoice represents the commodity exchange price for that day.

It further appears from his testimony that he sent said illustrative exhibit 2, the consular invoice, to the broker and that he withheld no information from said broker with regard to the value of the merchandise. The witness testified that he had no intention of deceiving the appraiser or of defrauding the United States Government of any revenue.

The petitioner also produced the testimony of the entry clerk connected with the customhouse broker. His testimony was in substance that he submitted both the contract of sale and the *pro forma* invoice (illustrative exhibit 1 and exhibit 3) to the customs authorities, together with a submission sheet (exhibit 4). The United States appraiser's information, as shown on the submission sheet, showed a value of $0.15 per pound "c & f New York," which indicated to the witness that entry should be made at that figure. Entry was, therefore, made in accordance with this information. Subsequently, the broker received information from the petitioner in the form of a consular invoice (illustrative exhibit 2), which was submitted to the collector of customs. The first notice of advance in value received by the broker was a notice of appraisement (exhibit 5). Prior to the receipt of this notice, the witness had no information that would lead him to doubt the correctness of the values used on entry, nor did the customs authorities indicate, prior to such notice, that the entered values were not correct. Another notice was received later, which the witness deemed to be a duplicate of the earlier one. All papers were submitted to the customs authorities, and at no time was information concerning the value of this merchandise withheld from the appraiser or examiner. There was no intention on the part of the witness to deceive the customs officials or to defraud the Government.

At the close of petitioner's case, counsel for the Government stated that the Government had the case investigated, and he was satisfied to ask no questions.

Upon this record, we find and so hold that the petitioner, in making entry, was without intent to deceive the customs officials or defraud the Government of any customs revenue. The petition is, therefore, granted.